Filed 07/13/26

VERMONT SUPERIOR COURT

Chittenden Unit
175 Main Street
Burlington VT 05401
802-863-3467
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 26-CV-00521

---

Mitchel Richardson v. Jacqueline Kelley, et al

---

## DECISION AND ORDER

Appellant/Landlord Mitchel Richardson brought this Rule 74 appeal of a Jan. 14, 2026 Burlington Housing Board of Review ("BHBR" or "Board") decision in Docket No. HBR-25-048. The Board awarded Appellee/Tenants Jacqueline Kelley and Sameh Soltana $2,900 plus interest, representing twice the $1,450 security deposit portion that the Board found Richardson wrongfully and willfully to have withheld.

Richardson asks this court to reverse the Board's decision, asserting it clearly erred in its factual findings, erred as a matter of law in its willfulness determination and abused its discretion in imposing prejudgment interest. Kelley and Soltana urge affirmance. Richardson has counsel. Kelley and Soltana represent themselves.

For the reasons set forth below, this court AFFIRMS IN PART and REVERSES IN PART the Board's decision.

### I.      The Board's Decision

The Board's Jan. 14, 2026 decision and order followed its Dec. 15. 2025 hearing in this case. Kelley, Soltana and Richardson all testified. The Board admitted additional evidence. This section focuses on the evidence and findings most relevant to this appeal.

The Board concluded Kelley and Soltana moved out of their apartment on Jun. 1, 2025. Decn. ¶ 31. In doing so, the Board credited Soltana's testimony and a video he took of the apartment "which appeared to be completely moved out, including an empty refrigerator and nothing on the walls." The video "showed his watch which displayed the date 'Sun, 01.'" Soltana testified that he took the video on Jun. 1, 2025. *Id.* ¶ 14.

Two days later, Richardson returned a portion (not part of this appeal) of Soltana's security deposit by check dated Jun. 3, 2025. *Id.* ¶ 16, Ex. scanned check NAS. Only on Jul. 10, 2025 did Richardson send by certified mail a letter "explaining [the] lease return process." Richardson did not provide a copy of that letter at the hearing. He testified to it and offered an Aug. 14, 2025 text about it. Richardson testified that he sent the letter to Soltana at the vacated apartment address since he had no forwarding address. No one accepted the letter and it came back to Richardson undelivered. *Id.* ¶¶ 21-22.

Richardson had known since Jun. 10, 2025 that Soltana did not have another forwarding address. Richardson had relayed Soltana's request that the new tenant place Soltana's mail in a common area at the vacated apartment in the meantime. *Id.* ¶ 17.

The Board concluded that Richardson had not timely returned the remaining $1,450 in security deposit to Kelley and Soltana. The Board cited Burlington Code of Ordinances § 18-120 which "requires security deposits to be returned within fourteen (14) days after a tenant vacates a residential dwelling unit, together with a written explanation of any amounts withheld." *Id.* ¶ 33. See also B.C.O. § 18-120(c) ("A landlord shall return the deposit to a tenant within fourteen (14) days from the date on which the landlord discovers that the tenant vacated or abandoned the rental unit, or the date the tenant vacated the dwelling unit, provided the landlord received notice from the tenant of that date, with a written statement itemizing any deductions.").

The Board found that Kelley and Soltana "testified credibly to moving out of the Premises by June 1, 2025." Richardson "testified to mailing the notice of withholding through certified mail, having it returned to him and did not make any further attempts to send the notice of withholding to [the tenants] until meeting in person with Appellant Soltana in August." As a result, the Board found "that notice requirements were not followed so that Respondent [Richardson] lost the right to withhold any part of the deposit." *Id.* ¶ 35.

The Board also found willful Richardson's failure timely to return or account for the $1,450 security deposit portion involved in this appeal. The Board explicitly discredited Richardson's credibility on the timing of Soltana's move-out and explicitly credited Soltana's. Contrast Decn. ¶ 37 ("Because the Board does not find the testimony of Respondent [Richardson] credible that Appellant Soltana had not vacated the Premises by June 1, 2025 . . . .") with *id.* ¶ 35 ("Appellants [Kelley and Soltana] testified credibly to moving out of the Premises by June 1, 2025 . . . ."). Richardson testified himself that he did not send his security deposit withholding notice until Jul. 10, 2025[1] and it came back to him undelivered. *Id.* ¶¶ 21-22. He also testified knowledgeably about his obligation to return a tenant's deposit within 14 days. *Id.* ¶ 12. The Board concluded that Richardson "did not make a good faith effort to get it to [Kelley and Soltana] through a different method" even though Richardson "was aware of the requirement to complete everything within fourteen days." The Board found "that [Richardson's] withholding was willful" under B.C.O. § 18-120(c) and 9 V.S.A. § 4461(b), (e). *Id.* ¶ 37.

The Board applied the standard for "willful" from *Harrington v. McCauley*, 1095-12-19 Cncv, slip op. at 1-2 (Vt. Sup. Ct. Feb. 4, 2020) where "'willfully' for purposes of the ordinances can mean violating the ordinance by design, by intention, by being obstinate or indifferent to the requirements of the law." *Id.* ¶ 36.

---

[1] A Jul. 10, 2025 security deposit return or withholding notice would have correlated with a Jun. 26, 2025 move-out date, using the allowed fourteen-day notice period, and nothing in the record suggested that timing. See B.C.O. § 18-120, 9 V.S.A. § 4461(c).

The Board ordered Richardson to return $2,900 (twice the $1,450 wrongfully withheld) plus prejudgment interest from Jun. 14, 2025 at a rate of $0.064 per day. *Id.* ¶ 38. The Board did not elaborate on its interest calculation.

## II.    Discussion

This court applies a deferential, on-the-record (versus de novo) review for Rule 74 appeals of BHBR decisions. See *In re Soon Kwon*, 2011 VT 26, ¶ 7, 189 Vt. 598, 599. "[A]bsent a clear and convincing showing to the contrary, decisions made within the expertise of administrative agencies are presumed to be correct, valid, and reasonable." *Gasoline Marketers of Vt., Inc. v. Agency of Natural Res.*, 169 Vt. 504, 508 (1999). "[T]he court's task is solely to determine whether there was 'any reasonable basis for the [agency's] finding[s].'" *In re Soon Kwon*, 2011 VT 26, ¶ 6. "This [c]ourt will set aside the clearly erroneous findings of an administrative board, but where the record contains any credible evidence to fairly and reasonably support the findings, the board's decision will stand." *Hall v. Dep't of Soc. Welfare*, 153 Vt. 479, 486–87 (1990).

"A 'determination by the trier of fact must stand if supported by credible evidence, even if inconsistencies or contrary evidence exists.'" *MTC Vt., Inc. v. Warner*, No. 25-CV-01707, 2025 WL 2144379, at *2 (Vt. Super. Ct. July 17, 2025) (Shafritz, J.) (citations omitted). "The court does not 'reweigh the evidence or assess the credibility of witnesses' because that is the province of the Board as the trier of fact." *South River, LLC v. Burlington Housing Bd. of Review*, No. 25-CV-3481, 2026 WL 374677, at *2 (Vt. Super. Ct. Feb. 03, 2026) (Shafritz, J.) (citation omitted).

### A. When Tenants Moved Out

Applying these standards to the Board's decision in this case, this court concludes the Board did not clearly err in making any of its factual findings. It permissibly credited Kelley's and Soltana's testimony over Richardson's in finding they had moved out of the premises on Jun. 1, 2025. The Board credited Richardson's testimony that he tried to send a withholding notice on Jul. 10, 2025, and that it came back to him undeliverable, even though he knew he had an obligation to get it to Kelley and Soltana within 14 days of their move-out. The Board found he did not do enough to do so. Nothing in the record suggests any impropriety in the Board's credibility choices. The Board had the discretion to make those choices.

Richardson cites two other reasons for his perception that the Board clearly erred. First, he calls Soltana's move-out video "fundamentally ambiguous" because his watch date did not explicate a month. Br. at 7. He nowhere mentions the Board's specific reference to Soltana's testimony that he recorded the video on Jun. 1, 2025. Br. at 7-8. That important piece of corroborating evidence demonstrates the Board did not clearly err in making this finding.

Second, Richardson cites the Board's "internal inconsistency" in finding the Jun. 1, 2025 move-out date by Soltana and a Jul. 1, 2025 move-in date by the next tenant. Br. at 9-10. The Board made no explicit finding on the new tenant's move-in date. Richardson effectively concedes as much. Br. at 10 ("If the Board credited the landlord's testimony about the July 1

move-in date . . . ."). The Board only recounted Soltana's and Richardson's differing testimony on the topic. Decn. ¶¶ 15, 19-20. This court sees no error, clear or otherwise, in the Board's forgoing this finding which had no apparent relevance to the scope of the hearing.

Even if the Board had found the new tenant moved in on Jul. 1, 2025, it had the discretion to do so. *In re Quechee Lakes Corp.*, 154 Vt. 543, 555 (1990) ("The trier of fact has the right to believe all of the testimony of any witness, or to believe it in part and disbelieve it in part, or to reject it altogether.") (internal quotations and citation omitted). In any event, Richardson's legal obligation to return or account for Kelley's and Soltana's security deposit comes from their move-out date, not the new tenant's move-in date. See B.C.O. § 18-120, 9 V.S.A. § 4461(c).

Lastly, after participating in the Board's hearing and referring to himself in his initial brief as "landlord," Richardson claims for the first time in his reply brief that he is neither "landlord" nor "owner" for statutory purposes in this case. Rep. Br. at 1-2. Having never raised the assertion before, he has waived it. See *Pope v. Town of Windsor*, 140 Vt. 283, 286 (1981) ("Plaintiff raises this issue for the first time on appeal, and issues not raised below are waived.").

### B. Board's Order of $2,900

Just as the court defers to the Board's factual findings, "[w]e have long extended this principle of deference to agency interpretations of statutes which the Legislature has entrusted to their administration." *In re Williston Inn Grp.*, 2008 VT 47, ¶ 12, 183 Vt. 621, 624. "The courts 'employ a deferential standard of review' of an agency's interpretation and application of its own regulations." *In re Soon Kwon*, 2011 VT 26, ¶ 6 (citation omitted). "[A]bsent compelling indication of error, we uphold the [agency's] interpretation[.]" *In re Williston Inn Grp.*, 2008 VT 47, ¶ 12.

"[B]ecause the Board's conclusions of law are based, at least in part, on interpretations of its own ordinances, those particular interpretations may only be overturned 'by compelling indications of error.'" *In re Soon Kwon*, No. S1400-08 Cncv, 2009 WL 6769873 (Vt. Super. Ct. Aug. 14, 2009) (Pearson, J.) (citation omitted); see also *id.* n.4 ("The court acknowledges that the Board's decision is based on, and includes interpretation of[,] both its own Ordinances (Burl. Ord. § 18-120), and statutes of the State of Vermont.")

This court finds nothing clearly erroneous in the Board's finding that Richardson did not timely notify Kelley and Soltana about withholding their remaining $1,450 security deposit. The Board explicitly credited the testimony of Kelley and Soltana regarding their move-out on Jun. 1, 2025, discrediting Richardson's contrary testimony. *Id.* ¶¶ 35, 37. The Board properly exercised its discretion to credit the parties' uncontroverted testimony that Kelley and Soltana never received either their $1,450 refund or a withholding notice. *Id.* ¶¶ 21-22, 37.

This court also concludes the Board made no mistake of law when it concluded Richardson had acted willfully under B.C.O. § 18-120(c) and 9 V.S.A. § 4461 (b), (e). In reaching its conclusion, the Board cited and applied the standard for willfulness articulated in *Harrington v. McCauley*, 1095-12-19 Cncv, slip op. at 1-2 (Vt. Sup. Ct. Feb. 4, 2020). In that

4

case, the landlord did not send the tenants the statutorily required letter because the tenants had said he could apply their security deposit to what they owed. The court applied the following legal standard to assess whether the landlord had acted willfully under the statute:

> "[T]he word 'willful' denotes intention and that . . . means 'by design.'" *State v. Parenteau*, 153 Vt. 123, 125 (1989) (internal quotations and citation omitted); see also, *United States v. Illinois Cent. R. Co.*, 303 U.S. 239, 243 (1938) (willfully "means purposely or obstinately and is designed to describe the attitude of a [party], who, having a free will or choice, either intentionally disregards the statute or is plainly indifferent to its requirements.") (citation omitted).

The Superior Court in that case upheld the double damages award: "Landlord clearly intended not to send the letter. Thus, his act was willful." *Harrington*, slip op. at 2.

A more recent Superior Court decision supports the Board's legal conclusion.

> The word "willful" is not defined in Section 4461 or within the Vermont Residential Rental Act. The Vermont Supreme Court stated, "[t]he term 'wilful' though given different definitions under different circumstances cannot well mean less than intentional and by design." *In re Chase*, 2009 VT 94, ¶ 26 (quoting *State v. Burlington Drug Co.*, 84 Vt. 243, 252 (1911)). In this respect, "willful" means intentional and by design as opposed to accidental.

*George's Way LLC v. Harrington*, No. 25-CV-02569, 2025 WL 2899379, at *3 (Vt. Super. Ct. Aug. 21, 2025) (Richardson, J.).

Applying those standards to this case, this court finds no error in the Board's decision that Richardson acted willfully. The Board found that Kelley and Soltana had vacated by Jun. 1, 2025, that Richardson did not attempt to send them their withholding notification until Jul. 10, 2025 (even then, to an address where he knew Soltana no longer resided) and took no efforts to contact them after his original certified mailing came back to him undelivered. These findings amply support the Board's conclusion that Richardson acted willfully. Even if this court reviewed the Board's legal conclusion de novo, it would uphold the Board's decision. See Richardson Br. at 6 (suggesting de novo standard of review for legal conclusions).

## C. Prejudgment Interest

The Board makes a great point when it notes that the interest in this case amounted to $1.92 at the time Richardson noticed his appeal. Board Br. at 11. This court does not share the Board's confidence that the doctrine of de minimis non curat lex allows it to leave the interest calculation in place in this case. Compare Board Br. at 12 (describing doctrine as "recognized legal principle in Vermont that the Supreme Court has relied upon to uphold trial court findings involving minor mathematical errors or imprecision") with *MacCormack v. MacCormack*, 2015 VT 64, ¶ 16 n.2, 199 Vt. 233, 242 n.2 ("These errors are easily corrected and do not affect the trial court's overall property distribution."). The Board may well understand the doctrine correctly. This court just cannot say for sure.

The Board had discretion to award prejudgment interest. "Such interest on a wrongfully-detained principal sum is awarded as of right where it is 'liquidated or capable of ready ascertainment,' or 'in the court's discretion for other forms of damage.'" *Remes v. Nordic Grp., Inc.*, 169 Vt. 37, 39 (1999) (citation omitted). Richardson agrees the Board had "well-recognized discretion to award prejudgment interest." See *id*. See also Br. at 6 (citing *Remes,* 169 Vt. at 41); *Remes* 169 Vt. at 41 ("Since prejudgment interest constitutes a part of the normal remedy in such cases, it is likewise available, under the court's discretion, in molding the relief that justice requires in a promissory estoppel case.") (citation omitted).

Richardson claims "[t]he Board's interest award lacks rational grounding and must be reversed or remanded for recalculation" because of its "flat daily rate of $0.064 without clear findings regarding the underlying principal, annualized rate, or statutory basis." Richardson Br. at 15.

Under *Remes*, this court would have thought that the prejudgment interest would apply to the "wrongfully-detained principal sum" of $1,450, beginning Jun. 16, 2025, the first day after the fourteen-day notification period under B.C.O. § 18-120 and 9 V.S.A. § 4461, based on the Board's finding of a Jun. 1, 2025 move-out date. Yet the Board applied interest to the $2,900 double-damage amount from Jun. 14, 2025. Board Decn. ¶ 38. Neither the Board's decision nor its brief makes clear its reasoning for that choice of date. Compare Decn. ¶ 38 with Br. at 11-12 (both omitting discussion).

This court would also have applied the statutory rate of 12%. See *Concord Gen. Mut. Ins. Co. v. Gritman*, 2016 VT 45, ¶ 33, 202 Vt. 155, 169 (citing 9 VSA § 41a(a) for prejudgment and 12 VSA § 2093(c) for post judgment interest rates). The Board applied a rate of $0.064 per day which equates to 0.8% simple interest. Compare Decn. ¶ 38 with Board Br. at 11 ("This interest rate equates to $23.38 per annum, or 0.8% simple interest."). This "is simply a rate that the Board has been applying unchallenged for some time based upon a review of typical saving account rates in the past." Board Br. at 11.

It appears that the Board used the savings rate that it applies to the accounts in which landlords should hold security deposits. See Board Br. at 11-12 (connecting B.C.O. § 18-120(a)(1)'s requirement that security deposits "be held by the owner in an interest-bearing account" with §18-120(c)'s provision that landlord may apply deposits to deductions and § 18-120(e)'s requirement that the Board shall award all remaining interest to the tenant). This court cannot tell how the Board chose to run interest from Jun. 14, 2025.

On balance, this court cannot tell from the record precisely how the Board reached its interest calculation. Ordinarily, those circumstances would support a remand. See *Mohr v. Vill. of Manchester*, 161 Vt. 562, 562 (1993) (mem.) ("We cannot review the trial court's exercise of discretion where there is no record of how that decision was reached. We therefore remand the matter to the trial court . . . .").

Yet the Board asks "the [c]ourt to make its own interest calculation in its independent judgment rather than to remand the case on the sole issue of interest." Board Br. at 11. The

Board rightly reminds this court of its limited appellate review. *Id.* ("notwithstanding generally applicable rules for Rule 74 appeals"). This court does not think it right for it to substitute its judgment for the appropriate interest rate under B.C.O. § 18-120, even with the Board's invitation. See *In re Williston Inn Grp.*, 2008 VT 47, ¶ 12 ("We have long extended this principle of deference to agency interpretations of statutes which the Legislature has entrusted to their administration."). This court believes the Board has the better position and expertise to make that interest rate determination.

Given the Board's invitation, this court will simply reverse the interest award as an abuse of discretion. E.g., *JDH Unlimited Inc. v. Koehler*, No. 22-1721-CV, 2023 WL 6289951, at *2 (2d Cir. Sep. 27, 2023) ("[A] district court abuses its discretion when it fails to provide an explanation, unless 'it is possible to discern that the appropriate criteria have been satisfied.'") (citation omitted). The court makes this choice to respect the Board's request to avoid a remand only to recalculate interest and to balance the court's limited authority in this Rule 74 appeal. Without the Board's request, this court would have remanded only on the interest calculation.

This court did not reach the merits of the Board's interest calculation. It has only noted its observations, given the limited record. This decision sets no precedent regarding the Board's authority or methodology regarding interest-rate calculations under B.C.O. § 18-120.

## III. Order

For the reasons set forth above, the court AFFIRMS IN PART and REVERSES IN PART the Board's decision.

Electronically signed pursuant to V.R.E.F. 9(d) on July 12, 2026.

Colin Owyang
Superior Court Judge

7